**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>  v.<br><br>AL-JAMAR DICKERSON,<br><br>    *Defendant*. | Crim. No. 19-210<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

  This matter comes before the Court by way of Defendant Al-Jamar Dickerson's motion to modify his sentence and for immediate compassionate release. D.E. 19. Dickerson's initial motion was filed *pro se*, but assigned counsel then filed a supplemental motion, D.E. 22, which counsel then supplemented with new information, D.E. 26.[1] The Government opposes the motion. D.E. 24, 27. The Court reviewed the parties' submissions[2] and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic. For the following reasons, Defendant's motion is denied.

---

[1] Defendant also supplemented his initial *pro se* motion, D.E. 25, which contained information addressed by his counsel in D.E. 26.

[2] Defendant's brief in support of his motion is referred to as "Br." (D.E. 19); Defendant's supplemental brief is referred to as "Supp. Br." (D.E. 37); Defendant's second supplemental brief is referred to as "2d Supp. Br." (D.E. 26); the Government's opposition is referred to as "Opp." (D.E. 24); and the Government's opposition to the second supplemental brief is referred to as "2d Opp." (D.E. 27).

I.   BACKGROUND

    A. Underlying Criminal Proceeding

On July 24, 2018, members of the Newark Police Department were surveilling an area, known to be an open-air drug market, to gather information about a shooting the day before. PSR ¶ 10. The officers saw Defendant make several hand-to-hand transactions in which he received cash in exchange for small items that he retrieved from a black plastic bag. *Id.* at ¶¶ 11-12. Defendant then entered a red Lincoln LS while holding the black plastic bag, and began traveling south; the officers then stopped the vehicle. *Id.* at ¶¶ 13-14. After securing a search warrant, officers discovered a hidden electronic compartment, or "trap," and found 3,103 decks of heroin along with a 9mm handgun. *Id.* at ¶ 15. The handgun had an extended magazine loaded with four rounds. *Id.*

In a plea agreement dated November 2, 2018, Defendant agreed to plead guilty to three counts: (1) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); (2) distribution of, and possession with intent to distribute, heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) use of, and carrying, a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). D.E. 15 at 1. On Count One, Defendant faced a statutory maximum of 10 years' imprisonment, and on Count Two, he faced a statutory maximum of 20 years' imprisonment. Count Three carried a statutory mandatory minimum of 5 years' imprisonment and a maximum of life. Critically, pursuant to statute, any sentence on Count Three had to be run consecutively to any sentence imposed on Counts One and Two.

Defendant, however, entered into a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). *Id.* at 2. That provision permits the parties to agree to a specific sentence that binds the court if the court accepts the plea. F.R.Cr.P. 11(c)(1)(C). The parties agreed to a sentence of

10 years' imprisonment followed by a term of supervised release of at least 3 years. D.E. 15 at 1. In addition, if the Court sentenced in accordance with the agreed upon sentence, Defendant waived his right to file an appeal, a collateral attack, or any other writ or motion (including pursuant to 28 U.S.C. § 2255) challenging his sentence. *Id.* at 10.

Because it was a Rule 11(c)(1)(C) plea, the Court ordered (with the parties' consent) a Presentence Report ("PSR") before the plea and sentencing on March 26, 2019. Docket. No. 19-cv-18941, D.E. 6-2 ("Tr."). At the plea and sentencing, Defendant acknowledged that (1) he possessed, with intent to distribute, approximately 3,103 decks of heroin on July 24, 2018, (2) he possessed a loaded firearm on the same day, (3) he possessed the firearm in furtherance of his intent to distribute the heroin that he had, and (4) he had a 2015 felony drug conviction. *Id.* at 21-22:6-12. The matter proceeded directly to sentencing. Defendant had reviewed the final PSR with his counsel, and his counsel had no objections to the PSR. *Id.* at 24:12-22. The Court then conducted a United States Sentencing Guidelines calculation to which the parties had no objection. *Id.* at 25-26. Without the career offender calculation, Defendant faced 151 to 188 months which, when coupled with the minimum consecutive sentence on Count 3, resulted in a range of 211 to 248 months. *Id.* When Defendant's career offender status was factored in, his Guideline range was 262 to 327 months. *Id.*

The Court expressed reservations about the stipulated sentence. Specifically, the Court raised concerns over Defendant's extensive criminal history; Defendant's failure to take any steps toward leading a law-abiding life; his recalcitrance with the U.S. Probation Office during the PSR process; and Defendant's lack of remorse over his actions. *Id.* at 35-37. Nevertheless, the Court imposed a sentence consistent with the plea agreement, sentencing Defendant to a total of 120

months: 60 months on each of Counts 1 and 2 to run concurrently followed by a consecutive sentence of 60 months on Count 3.  *Id.* at 38.

Defendant is currently housed at FCI Allenwood Medium in Pennsylvania.  His projected release date is March 12, 2027.

### B.  COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *Coronavirus Disease 2019 (COVID-19)*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Aug. 12, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html#background.  "COVID-19 is primarily transmitted from person-to-person through respiratory droplets.  These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.*  Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death).  *Id.*  Currently, there is no known cure for COVID-19.  As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and cleaning of surfaces and devices.  *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus.  As a person get older, his/her risk for severe illness from COVID-19 increases.  *Coronavirus Disease 2019 (COVID-19)*, "Older Adults," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

For example, persons in their sixties and seventies are at a higher risk than people in their fifties. *Id.* Those eighty-five or older are at greatest risk. *Id.*

The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic obstructive pulmonary diseases, heart conditions such as coronary artery disease, weakened immune system from organ transplant, obesity, pregnancy, sickle cell disease, smoking, and type 2 diabetes mellitus. *Coronavirus Disease 2019 (COVID-19)*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Persons who have the following medical conditions might be at an increased risk: asthma, cerebrovascular disease, cystic fibrosis, hypertension, immunocompromised state, neurologic conditions, liver diseases, pulmonary fibrosis, thalassemia, type 1 diabetes mellitus. *Id.*

Finally, racial and ethnic minorities may also be at an increased risk due to societal inequities, such as to access to health care and poorer living conditions. *Coronavirus Disease 2019 (COVID-19)*, "Health Equity Considerations and Racial and Ethnic Minority Groups," Centers for Disease Control and Prevention (July 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html. Factors to be considered are discrimination; healthcare access and utilization; occupation; educational, income, and wealth gaps; and housing. *Id.*

As of February 26, 2021, the United States had 28,138,938 COVID-19 cases, resulting in 503,587 deaths. *CDC COVID Data Tracker*, "United States COVID-19 Cases and Deaths by State," https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (Feb. 26, 2021).

### 1. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus, and initially admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screening for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but who has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of fourteen days or until cleared by medical staff. Opp. at 5. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

As of February 26, 2021, the BOP COVID-19 statistics are as follows: (1) currently 1,449 inmates and 1,624 staff presently have confirmed positive tests; (2) 46,184 inmates and 4,862 staff have recovered; and (3) 222 inmates and 4 staff have died. *COVID-19 Cases*, Bureau Of Prisons, https://www.bop.gov/coronavirus/index.jsp (Feb. 26, 2021). FCI Allenwood Medium, where

Defendant is housed, currently has 2 positive inmate cases while 557 inmates and 49 staff have recovered *Id.*

### 2. New Jersey

New Jersey has been particularly hard hit by the pandemic. New Jersey has taken numerous affirmative steps, such as the Governor's stay-at-home order issued on March 21, 2020, to combat the virus. In addition, New Jersey initially closed schools indefinitely and closed beaches, state parks, and county parks. When the number of New Jersey cases started to decline, many of the initial restrictions were lifted or relaxed. However, New Jersey is now facing another uptick in positive cases, and the Governor recently issued new mitigation orders. *Governor Murphy Announces New COVID-19 Mitigation Measures*, New Jersey COVID Information Hub (Nov. 11, 2020), https://covid19.nj.gov/faqs/announcements/all-announcements/governor-murphy-announces-new-covid-19-mitigation-measures. As of February 26, 2021, New Jersey has had 692,931 total cases and 86,032 confirmed deaths. Data Dashboard, New Jersey COVID Information Hub https://covid19.nj.gov/ (Feb. 26, 2021). Essex County, where Defendant lived at the time of the offense, has had 66,599 cases with 2,400 deaths, including 329 new cases. *Id.*

### C. Dickerson's Motion

Dickerson is 28 years old. In his initial brief, Defendant sought release for the following reasons: unanswered requests for medical treatment, asthma, early onset of coronary pulmonary disease, hypertension, anxiety attacks, depression, and post-traumatic stress disorder. Br. at 1-2. Dickerson did not attach medical records that corroborated his claims except for emails in which he (among other things) requested a refill for pain pills (for "bad head pains"), a request for treatment because his toenail came off, and a request for an asthma pump. *Id.* at 4-5. In his supplemental brief, Dickerson focuses on his hypertension and cites to medical records in support.

7

Supp. Br. at 4. In his additional supplemental brief, Dickerson indicates that he had contracted COVID-19. 2d Supp. Br. at 1. *See also* D.E. 25.

In opposition, the Government asserts that Dickerson has not demonstrated extraordinary and compelling reasons for release because his medical records reveal that he repeatedly denied having hypertension and of four separate readings in 2020, only two were slightly elevated. Opp. at 3, 10. The Government also argues that even if Dickerson had demonstrated extraordinary and compelling reasons, the Section 3553(a) factors weigh heavily against release. *Id.* at 11. As to Dickerson's COVID-19 diagnosis, the Government notes that Defendant was asymptomatic. 2d Opp. at 1.

The Warden of FCI Allenwood Medium denied Defendant's request for compassionate release. D.E. 22-1. This motion followed.

## II.     LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>> (i) *extraordinary and compelling reasons warrant such a reduction*; or
>>>
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the

> offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added). The parties agree that Defendant has satisfied the statutory exhaustion requirement. Opp. at 4.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D).

In the application note, the fourth consideration requires a determination of the Director of the BOP. *Id.* cmt. n. 1(D). Here, the Government does not contest that the policy statement should also apply when the motion is filed by a defendant, in addition to a motion filed by the BOP Director. The Court agrees. *See United States v. Rodriguez*, 451 F. Supp. 3d 392 (E.D. Pa. 2020),

9

Pursuant to Section 3582(c)(1)(A), the Court must also consider the factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses of Defendant. *Id.*

### III. ANALYSIS

The Court concludes that Defendant has not met his burden in demonstrating extraordinary and compelling reasons to justify his release. Defendant has not adequately established that his hypertension is so severe that he maybe be at a heightened risk. Defendant's evidence consists of four readings in 2020, two of which were within normal limits and two of which were slightly elevated. However, assuming that Defendant does suffer from asthma and hypertension, these are factors that "might" place Defendant at higher risk should he be infected. *Coronavirus Disease 2019 (COVID-19)*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Numerous courts have denied release on these grounds. *See, e.g.*, *United States v. Cox*, 478 F. Supp. 3d 596, 597 (E.D. Mich. 2020) (finding that hypertension does not constitute extraordinary and compelling reasons as it is common medical condition that affects over 100 million Americans).

More importantly, Defendant actually contracted COVID-19 and appears to have made a full recovery. Reinfection is rare. Centers for Disease Control and Prevention, *Reinfection with COVID-19* (Oct. 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. In addition, FCI Schuylkill Medium currently has only 2 positive cases.

In addition, the Section 3553(a) factors countenance against release. Defendant is not scheduled to be released for over 6 years on his 10-year sentence. The Third Circuit has found

that the amount of time remaining on a sentence is an appropriate consideration under Section 3553(a) when a defendant seeks compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020). The Circuit reasoned as follows:

> We have not previously considered whether a district court abuses its discretion by denying a motion for compassionate release based on the amount of time remaining to be served in the inmate's sentence. But numerous district courts have taken this into account in considering whether to grant compassionate release. *See, e.g.*, *United States v. Bogdanoff*, 459 F. Supp. 3d 653 (E.D. Pa. May 8, 2020) (denying compassionate release where the inmate had served only seven years of an 18-year sentence, and noting that the case was "much different than others where defendants [sought compassionate release] at the end of their sentence"); *United States v. Moskop*, No. 11-cr-30077, 2020 WL 1862636, at *1–2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where the inmate had served less than 10 years of a 20-year sentence and explaining that the "sentencing objectives of specific deterrence and protecting the public [would] not [be] fully served by less than 10 years of incarceration"). And at least one of our sister circuits has approved that consideration. *See* [*United States v.*] *Chambliss*, 948 F.3d [691,] 694 (5th Cir. 2020) (holding that a district court did not abuse its discretion in denying compassionate release based, in part, on the defendant's having served only 14 years of a 30-year sentence). We agree, as this consideration is consistent with the text of 18 U.S.C. § 3582(c)(1)(A), which, again, requires a court reviewing a motion for compassionate release to "consider[ ] the factors set forth in [§] 3553(a) to the extent that they are applicable." Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may— along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors. Hence we cannot conclude that the District Court acted unreasonably in determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors.

*Id.* at 330-31 (footnote omitted).

Other Section 3553(a) considerations also countenance against release. The firearm in this matter contained an extended magazine, capable of holding over 30 rounds of ammunition – and

11

it was possessed in connection with heroin distribution. Moreover, despite his relatively young age at the time of the offense, Defendant had already accumulated enough criminal history points to qualify as a career offender. Indeed, as a career offender, Defendant was facing a United States Sentencing Guidelines' range of 262 to 327 months, as opposed to the 120 months that he received. Given this disparity, along with a lack of remorse, a lack of candor with the United States Probation Department, and the lack of any affirmative steps to change the trajectory of Defendant's life, the Court had express reservations about accepting the plea. Defendant has produced no evidence to allay those concerns of the Court. Given this information, the Court is firmly convinced that if Defendant were released, there is an incredibly high likelihood that he would reoffend.

**IV.    CONCLUSION**

For the foregoing reasons, the Court denies Defendant's motion. An appropriate Order accompanies this Opinion.

Dated:  February 26, 2021

John Michael Vazquez, U.S.D.J.